# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NIGEL DWAYNE PARMS,<br>　　　　Plaintiff | )<br>)<br>) | C.A. No. 11-324 Erie |
| v. | )<br>) | District Judge McLaughlin |
| MICHAEL W. HARLOW, et al.,<br>　　　　Defendants. | )<br>)<br>) | Magistrate Judge Baxter |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.　　RECOMMENDATION

It is respectfully recommended that Defendants' partial motion to dismiss complaint [ECF No. 20] be granted in part and denied in part, and all claims other than Plaintiff's ADA claim for prospective injunctive relief should be dismissed.

### II.　　REPORT

#### A.　　Relevant Procedural and Factual History

On December 30, 2011, Plaintiff Nigel Dwayne Parms, an inmate incarcerated at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Named as Defendants are: Michael W. Harlow, Superintendent at SCI-Albion ("Harlow"); Mrs. P. McKissock, Hearing Examiner at SCI-Albion ("McKissock"); Mr. Heckle Harold, Principal at SCI-Albion ("Harold"); Ms. Mary Larson, Education Counselor at SCI-Albion ("Larson"); Ms. Giles, Inmate Employment at SCI-Albion ("Giles"); Mr. Bentley, Unit Manager at SCI-Albion ("Bentley"); Timothy I. Mark ("Mark"), Chief Hearing Examiner at the Pennsylvania Department of Corrections ("DOC"); and Mr. John E. Wetizel, Secretary of the DOC ("Wetizel").

In his complaint, Plaintiff generally claims that Defendants are discriminating against him because of his hearing disability in violation of Titles I and II of the American with Disabilities

Act ("ADA"). In particular, Plaintiff alleges that he is deaf, yet has been found guilty of several misconducts for refusing to obey verbal orders and refusing to answer the bell for count. Plaintiff claims that these misconducts violated his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment due process rights. In addition, Plaintiff claims that he has been effectively denied access to the courts, access to medical assistance, and participation in religious services, because Defendants have failed to provide him with an interpreter. Plaintiff also claims that he has been denied prison employment and educational services on account of his hearing disability, in violation of his Fourteenth Amendment equal protection rights. Finally, Plaintiff claims that SCI-Albion committed theft by deception by charging him $25.00 for cleaning his cell when the cell was never cleaned. As relief for his claims, Plaintiff seeks monetary damages and injunctive relief in the form of an order requiring SCI-Albion to either hire an interpreter or provide training for staff or inmates to interpret for him.

Defendants have filed a partial motion to dismiss complaint [ECF No. 20] arguing that Plaintiff has failed to state a claim upon which relief may be granted, except for his ADA claim for prospective injunctive relief, to the extent such claim pertains to Defendant Harlow only. Defendants have filed a separate partial answer to the complaint [ECF No. 22] responding solely to Plaintiff's ADA claim for prospective injunctive relief against Defendant Harlow. Plaintiff has since filed a reply to Defendants' motion to dismiss. [ECF No. 26]. This matter is now ripe for consideration.

### B. Standards of Review

#### 1. Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the

complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

Recently, the Third Circuit Court prescribed the following three-step approach to determine the sufficiency of a complaint under Twombly and Iqbal:
> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because

3

> they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011), citing Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S.Ct. at 1947, 1950); see also Great Western Mining & Min. Co. v. Rothschild LLP, 615 F.3d 159, 177 (3d Cir. 2010).

### 2.    *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972).  If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements.  See Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969)("petition prepared by a prisoner... may be inartfully drawn and should be read 'with a measure of tolerance'"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991).  Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant.  Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997)(overruled on other grounds).  See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).  Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

## C. Discussion

### 1. ADA Claims

Plaintiff purports to bring claims under both Title I and Title II of the ADA; however, prison inmates are not considered employees under Title I and are, thus, not entitled to that Title's protections. See, e.g., Battle v. Minnesota Dept. of Corrections, 40 Fed.Appx. 308 (8th Cir. 2002)(upholding dismissal of inmate's claim under Title I of the ADA because inmate was not an employee for purposes of that Title); Murdock v. Washington, 193 F.3d 510, 512 (7th Cir. 1999)(concluding that Title I of the ADA does not apply to inmates). Accordingly, Plaintiff's ADA claim may be cognizable only to the extent it is being brought pursuant to Title II.

Title II of the ADA provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services or activities of a public entity or be subjected to discrimination by such entity." 42 U.S.C. § 12132. The term "public entity," as defined by Title II of the ADA, does not include individuals. 42 U.S.C. § 12131(1). Thus, the law is clear that individuals, sued in their official capacities, are not "public entities" under the ADA and are not subject to liability thereunder. Emerson v. Thiel College, 296 F.3d 184, 189 (3d Cir. 2002)(individuals are not subject to liability under Titles I or II of the ADA). Accordingly, Plaintiff's ADA claims against the Defendants, to the extent Plaintiff seeks monetary damages, are barred as a matter of law and should be dismissed.

Nonetheless, as Defendants have correctly noted, an exception to this general rule has been recognized by the Third Circuit to the extent a plaintiff seeks prospective injunctive relief against state officials acting in their official capacities. Koslow v. Commonwealth of Pa., 302 F.3d 161, 178 (3d Cir. 2002). In this case, Plaintiff seeks prospective injunctive relief in the form of an order requiring SCI-Albion to either hire a certified interpreter or provide training for staff or inmates to act as interpreters. Defendants have not sought to dismiss this claim but do

seek to have the claim dismissed as to all Defendants other than Defendant Harlow, because, as Superintendent of SCI-Albion, he is "the individual most able to provide prospective injunctive relief to the extent any such relief is appropriate." (ECF No. 21, Defendants' Brief, at p. 10). Although the Court agrees with the efficacy of limiting the Defendants against whom Plaintiff may pursue prospective injunctive relief, it is not at all clear that Defendant Harlow is the only Defendant in the position to provide the relief requested, since no evidence has yet been submitted to support this assertion. To determine otherwise would require this Court to look beyond the four corners of the complaint in this matter, which is not permitted at the pleading stage. Accordingly, Plaintiff's ADA claim, to the extent he seeks prospective injunctive relief, should be allowed to proceed against all Defendants at this early stage of the proceeding.

### 2. **Misconduct Claims**
#### a. **Eighth Amendment**

Plaintiff claims that he was subjected to cruel and unusual punishment when he was issued and found guilty of misconducts for refusing to obey verbal orders, despite Defendants' knowledge that he was deaf.

To succeed on an Eighth Amendment claim based on prison conditions, a plaintiff must show "he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted the injury with deliberate indifference." Farmer v. Brennan, 511 U.S. 825, 834 (1994) An objectively, sufficiently serious injury is one that denies the inmate "the minimal civilized measure of life's necessities," such as food, water, shelter. Rhodes v. Chapman, 452 U.S. 337, 347 (1981); see also Tillman v. Lebanon County Correctional Facility, 221 F.3d 410, 419 (3d Cir. 2000); Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992)(holding that, at a minimum, correctional institutions must provide inmates with "adequate food, clothing, shelter, sanitation, medical care, and personal safety"). Furthermore, to establish deliberate indifference: 1) a prison

6

official must know of and disregard an excessive risk to inmate health or safety; 2) the official must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and 3) the official must also draw the inference. Farmer, 511 U.S. at 837.

Under the objective prong of the test for an Eighth Amendment claim, even false misconduct charges are not "sufficiently serious" that they result in "the denial of the minimal civilized measure of life's necessities." Rhodes, 452 U.S. at 347. Indeed, it has been held that false misconduct charges do not constitute the denial of "basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety." Young, 960 F.2d at 364. In the same way, Plaintiff's allegations of unfair misconduct charges, taken as true, fail to rise to an Eighth Amendment violation. As a result, Plaintiff's Eighth Amendment claim in this regard should be dismissed.

### b.    Fourteenth Amendment

Plaintiff claims that his Fourteenth Amendment right to due process was violated by the issuance and ultimate conviction of the misconducts for refusing to obey verbal orders.

Initially, the filing of a misconduct, even if later proven to be false, "is not a constitutional violation so long as the inmate is provided with due process." Flanagan v. Shively, 783 F.Supp. 922, 931 (M.D.Pa. 1992), aff'd, 980 F.2d 722 (3d Cir. 1992), cert denied, 510 U.S. 829 (1993)(citations omitted). In this case, Plaintiff does not complain that Defendants either failed to properly notify him of the charges associated with each misconduct or failed to afford him a hearing regarding each of the misconducts. Plaintiff merely challenges the fact that the misconducts for refusing to obey verbal orders were issued with the knowledge that he was deaf; an argument Plaintiff had the opportunity to present at his misconduct hearings. Thus, Plaintiff was provided with all due process to which he was entitled. As a result, Plaintiff's Fourteenth Amendment due process claim should be dismissed.

### **3.** **Access to Courts**

Plaintiff claims that he was constructively denied access to the courts because, without an interpreter, he "is not able to communicate and seek legal aide [sic] and assistance." (ECF No. 26, Plaintiff's Reply Brief, at p. 1).

While inmates have the right to adequate, effective, and meaningful access to the courts, Bounds v. Smith, 430 U.S. 817, 828 (1977), the United States Supreme Court restricted who may bring an access to courts claim in Lewis v. Casey, 518 U.S. 343, 355 (1996).[1] The Lewis Court held that, in order to state a claim for a denial of the right of access to the courts, a plaintiff must show actual injury. Id. The plaintiff must show that, as a result of the defendant's actions, he lost the ability to present an "arguably actionable claim" against the validity of his sentence under direct or collateral appeal or a claim challenging his conditions of confinement in a civil rights action. Id. at 356. The Third Circuit has further described the Lewis holding:

> to be able to bring a viable claim, the plaintiff inmates ha[ve] to show direct injury to their access to the courts. The Court explained that an inmate could show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or [he could show] that he had suffered arguably actionable harm that he wanted to bring before the courts, but was so stymied by the inadequacies ... that he was unable even to file a complaint.

---

[1]

The Lewis Court opined:
> ...Bounds does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

Id. at 355.

8

Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997).

So, under Lewis, this Court must determine whether Plaintiff has shown that he lost the ability to present an "arguably actionable claim." Here, Plaintiff's allegations fail to demonstrate that Plaintiff lost the ability to pursue an "arguably actionable claim" challenging either the validity of his sentence or conditions of confinement due to Defendants' alleged failure to provide an interpreter. Accordingly, Plaintiff's denial of access to the courts claim lacks merit and should be dismissed.

### **4.** **Free Exercise of Religion**

Plaintiff claims that Defendants' failure to provide an interpreter has constructively denied him participation in religious services in violation of his First Amendment right to free exercise of religion.

The First Amendment's prohibition on laws "respecting an establishment of religion, or prohibiting the free exercise thereof" applies to the states through the Fourteenth Amendment. Cantwell v. Connecticut, 310 U.S. 296, 303 (1940). However, the right to practice one's religion while in prison is not absolute. See O'Lone v Shabazz, 482 U.S. 342, 348 (1987) (free exercise rights are "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or maintain prison security"); Price v. Johnston, 334 U.S. 266, 285 (1948) ("Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."). The Free Exercise Clause, importantly, is not a general protection of religion or religious belief. It has a more limited reach of protecting only the *free exercise* of religion.

In Employment Div., Dept. Of Human Resources of Oregon v. Smith, 494 U.S. 872 (1990), the Supreme Court noted that the "free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires." 494 U.S. at 877. As a

result, the government may not, for example, (1) compel affirmation of religious beliefs; (2) punish the expression of religious doctrines it believes to be false; (3) impose special disabilities on the basis of religious views or religious status; or (4) lend its power to one side or the other in controversies over religious authorities or dogma. Id.

In Lyng v. Northwest Indian Cemetary Protective Ass'n, 485 U.S. 439 (1988), the Court noted that there, and in Bowen v. Roy, 476 U.S. 693 (1986), no free exercise claim was stated even though "the challenged Government action would interfere significantly with private persons' ability to pursue spiritual fulfillment according to their own religious beliefs." 485 U.S. at 449. There was no free exercise problem in those cases because "[i]n neither case ... would the affected individuals be coerced by the Government's action into violating their religious beliefs." Id. As the Court said in Roy, "[n]ever to our knowledge has the Court interpreted the First Amendment to require the Government *itself* to behave in ways that the individual believes will further his or her spiritual development or that of his or her family." 476 U.S. at 699; see also Sherbert v. Verner, 374 U.S. 398, 412 (1963) (Douglas, J., concurring)("[T]he Free Exercise Clause is written in terms of what the government cannot do to the individual, not in terms of what the individual can exact from the government."). Specifically, "it is necessary in a free exercise case for one to show the coercive effect of the enactment as it operates against him in the practice of his religion." School District of Abington Tp., Pa. v. Schempp, 374 U.S. 203, 223 (1963). There is no significant burden on free exercise rights where, as here, the government has "impose[d] neither criminal nor civil sanctions on any type of religious service or rite," and where it "does not require [plaintiffs] to choose between their religious beliefs and receiving a government benefit." Locke v. Davey, 540 U.S. 712, 720-21 (2004).

Here, Plaintiff has acknowledged that he "may attend the religious services provided by the institution...." (ECF No. 26, Plaintiff's Reply Brief, at p. 2). He alleges, however, that such attendance is "futile" because he "does not understand what is happening... or what is being said."

10

(Id.). While the Court finds this regrettable, there is no indication that Plaintiff has been coerced into violating his religious beliefs or that he has been punished for exercising his religious freedom. In the absence of such allegations, Plaintiff has failed to state a free exercise claim upon which relief may be granted and the same should be dismissed.

### 5. Denial of Medical Treatment

Plaintiff claims that his Eighth Amendment rights have been violated because he has been denied medical treatment on various occasions due to his hearing disability. In particular, Plaintiff alleges that on November 29 and 30, 2011, he went to SCI-Albion's medical department, but did not receive medical assistance because there was no interpreter available to allow him to "effectively communicate with the nurse." (Id.).

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need[2] involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of

---

[2] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Here, it is apparent from the allegations of the complaint that Plaintiff deliberately sought treatment for an unspecified medical need, yet was turned away because an interpreter was not present to allow him to communicate with a medical provider. Accepted as true and construed in the light most favorable to Plaintiff, a *pro se* litigant, such allegations are minimally sufficient to state a claim of deliberate indifference to a serious medical need under the Eighth Amendment. Accordingly, Defendants' motion to dismiss Plaintiff's Eighth Amendment deliberate indifference claim should be denied and such claim should be allowed to proceed at this early stage of the proceeding.

### **6.** **Equal Protection**

Plaintiff claims that he has been "constructively denied" prison employment and educational services "on the account of his disability," in violation of his Fourteenth Amendment equal protection rights. (Id.).

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike' " Artway v. Attorney General of State of N.J., 81 F.3d 1235, 1267 (3d Cir. 1996), quoting City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985). "When a state policy does not adversely affect a suspect class or impinge upon a fundamental right, all that is constitutionally required of the state's program is that it be rationally related to a legitimate state object." Coakley v. Murphy, 884 F.2d 1218, 1222 (9th Cir. 1989), citing Massachusetts Bd. Of Retirement v. Murgia, 427 U.S. 307, 314 (1976).

Thus, classifications involving a suspect or quasi-suspect class, or actions that impact certain fundamental constitutional rights, are subject to heightened or "strict" scrutiny. City of Cleburne, 473 U.S. at 439. Other classifications are subject to the "rational basis" test, which requires that a classification need only be rationally related to a legitimate state interest to survive an equal protection challenge. F.C.C. v. Beach Communications, Inc., 508 U.S. 307 (1993) (state action that does not affect a suspect category or infringe on a fundamental constitutional right must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification); Chapman v. United States, 500 U.S. 453, 465 (1991).

### a. Classification

Plaintiff alleges that he has been treated differently from other inmates based upon his hearing disability. However, the Supreme Court has held that disabled persons are not a suspect class for purposes of an equal protection claim. City of Cleburne, 473 U.S. at 439. In addition, it is well settled that prison inmates are not a suspect class. Abdul-Akbar, 239 F.3d at 317; See also Nicholas v. Tucker, 114 F.3d 17, 20 (2d Cir. 1997) (inmates are not suspect class so as to require more exacting scrutiny), cert. denied, 523 U.S. 1126 (1998); Hampton v. Hobbs, 106 F.3d 1281, 1286 (6th Cir. 1997); Zehner v. Trigg, 133 F.3d 459, 463 (7th Cir. 1997). Thus, Plaintiff has not alleged that he is a member of a suspect class.

### b. Fundamental Right

With respect to whether a fundamental right has been affected, it is well-settled that inmates have no federal constitutional or statutory right to work in prison. Presbury v. Wenerowicz, 472 Fed.Appx. 100, 101 (3d Cir. 2012), citing James v. Quinlin, 866 F.2d 627, 629-30 (3d Cir. 1989). Similarly, an inmate has no liberty or property interest in education

13

programs offered in prison. Coffey v. Ingram, 1988 WL 82855, at * 1 (E.D.Pa. Aug.4, 1988), citing Hayes v. Cuyler, 475 F.Supp. 1347, 1350 (E.D.Pa.1979). Thus, no fundamental rights have been asserted by Plaintiff.

### c.     Others Similarly Situated

There being no suspect class or fundamental right at issue, Plaintiff must show that the treatment he received was unlike that received by inmates similarly situated to him and was not rationally related to a legitimate government interest. This he has failed to do. In particular, Plaintiff has failed to allege that he has been treated differently than any other similarly situated inmate. Instead, he simply asserts that he has not been given accommodations for his hearing disability. This is insufficient to state an equal protection claim and the same should be dismissed accordingly.

### 7.     Theft by Deception

Finally, Plaintiff claims that Defendants committed "theft by deception" by charging him $ 25.00 for cell cleaning, even though his cell was never cleaned. As a result, Plaintiff purports to bring a claim pursuant to 18 Pa.C.S.A. § 3921(a)(1), which is a Pennsylvania criminal statute. This he cannot do, as this Court lacks the requisite jurisdiction to enforce Pennsylvania's criminal laws.

To the extent Plaintiff is attempting to bring a state tort law claim against the Defendants, the doctrine of sovereign immunity bars damage claims for state law torts against employees of Commonwealth agencies acting within the scope of their duties, subject to several enumerated exceptions, none of which are applicable here.[3]  See 42 Pa.C.S. §§ 8521-8522. Thus, Plaintiff's

---

[3] 42 Pa.C.S. § 8522(b) provides the following list of exceptions to the sovereign immunity covering Pennsylvania state

theft by deception claim against Defendants should be dismissed.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' partial motion to dismiss complaint [ECF No. 20] be granted as to all claims other than Plaintiff's Eighth Amendment deliberate indifference claim and Plaintiff's ADA claim for prospective injunctive relief, both of which should be allowed to proceed at this early stage of the proceeding.

In accordance with the Federal Magistrates Act, 28 U.S.C. ' 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file objections will waive the right to appeal. Brightwell v. Lehman, 637 F. 3d 187, 193 n. 7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Date: September 11, 2012

cc: The Honorable Sean J. McLaughlin
United States District Judge

---

actors: (1) vehicle liability; (2) medical/professional liability; (3) care, custody, or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, and control of animals; (7) liquor store sales; (8) national guard services; and (9) toxoids and vaccines.