IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NIGEL DWAYNE PARMS, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 11-324E |
| v. | ) |
| | ) Judge Cathy Bissoon |
| MICHAEL W. HARLOW, et al., | ) Magistrate Judge Baxter |
| | ) |
| Defendants. | ) Electronically Filed. |

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiff, Nigel Dwayne Parms, filed this action *pro* se, while incarcerated at SCI-Albion in December 2011. He was released in July 2012 but is now incarcerated in the Allegheny County Jail. (ECF 57, p.2)

Plaintiff's complaint named eight current and former DOC officials and employees as defendants and asserted a variety of claims pursuant to "Title I and II of the Americans with Disabilities Act; Due Process, Theft by Deception under Color of Law 18 Pa.C.S.A Section 3921 (a)(1); and 42 U.S.C. Section 1982." (ECF 7.)[1]

---

[1] The factual allegations of the Complaint, in their entirety, are as follows:

> The officials of the Department of Corrections at SCI-Albion are discriminating against me because of my disability. I was give [sic] misconduct report for refusing to obey orders and found guilty of there [sic] reports even though I am deaf. The misconducts are as follows: [list of 20 misconducts omitted]. The officials are also writing in my file that I am refusing to stand for count knowing and that I am deaf and cannot hear the bell ring and the announcement for count. They are also discriminating against me by not giving me a job because of my disability also, SCI-Albion committed theft under color of law because they charged me $25.00 to clean my cell and the cell was never clean.

(ECF 7, §IV(C).)

In his response to defendants' Partial Motion to Dismiss, Plaintiff expanded on his claims and included an Eighth Amendment claim for denial of medical treatment on 11/29/11 and 11/30/11, due to his disability (deafness).  (ECF 26, p.2.)  In particular, plaintiff claims he was turned away from medical and denied treatment because no interpreter was present.  *Id*.

By Report and Recommendation dated 9/11/12 (adopted by the District Court on 10/2/12), this Court dismissed all of Plaintiff's claims with the exception of (1) his newly asserted Eighth Amendment deliberate indifference claim for denial of medical treatment,  and (2) his claim for prospective injunctive relief under Title II of the ADA *(i.e.,* where he sought an order directing SCI-Albion to hire a certified interpreter or provide training for staff or inmates to act as interpreters).  (ECF 27 and 28.)

## ARGUMENT

### I. Plaintiff's Claim for Prospective Injunctive Relief under the ADA is Moot

Plaintiff completed his maximum sentence on 7/2/12 and was released from the DOC's custody at that time.  (Exh. A; Exh. B.)   As part of the actual case or controversy requirement, a plaintiff must have standing throughout the litigation of a law suit, not just at the time the complaint is filed*.*  Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997). If a Plaintiff loses standing at some point in the litigation, the case becomes moot. Lewis v. Continental Bank corp., 494 U.S. 472, 477-78 (1990).

The law is clear that "the exercise of judicial power under Article III of the Constitution depends on the existence of a case or controversy." Preiser v. Newkirk, 422 U.S. 395, 401 (1975); Abdul-Akbar v. Watson, 4 F.3d 195, 206 (3d Cir. 1993). As noted by the Supreme Court, "a federal court has neither the power 'to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them.'" Preiser, 422 U.S. at 401, citing North Carolina v Rice, 404 U.S. 244, 246 (1971).

An Inmate's transfer or release from a facility moots equitable and declaratory claims. Sutton v. Rasheed, 323 F. 3d 236, 248 (3d Cir. 2003); Abdul-Akbar v. Watson, 4 F. 3d 195, 206 (3d Cir. 1993). Exposure to past allegedly illegal conduct does not give rise to an actual or imminent injury. City of La. v. Lyons, 461 U.S. 95,102 (1983)

A claim will not be moot when the challenged action is 1) too short in duration "to be fully litigated prior to its cessation or expiration"; or 2) "there is a reasonable likelihood that the same complaining party would be subjected to the same action again". Sutton v. Rasheed, 323 F.3d at 248 (3d Cir. 2003); Sosna v. Iowa, 419 U.S. 393, 400 (1975). Abdul-Akbar, 4 F 3d. at 206 (3d Cir. 2003). However, neither exception applies here.

Mr. Parms' ADA claim for injunctive relief is plainly moot. He was released from the DOC three years ago, and his last known address is the Allegheny County Jail. Once a prisoner has been released he can have no continuing interest in the prison policies he was challenging. See Cobb v. Yost,

342 Fed. App'x 858, 859 (3d Cir. 2009). The mere conjecture that Mr. Parms might some day be convicted of another state sentence, and then incarcerated at SCI-Albion again, is not sufficient to overcome mootness in this case. See Abdul-Akbar, 4 F 3d. at 206-07.

## II. Plaintiff Cannot Establish an Eighth Amendment Claim Against the DOC Defendants

### A. Plaintiff Failed to Exhaust his Administrative Remedies

The Prison Litigation Reform Act requires a prisoner to exhaust any available administrative remedies before challenging prison conditions in federal court. Woodford v. Ngo, 548 U.S. 81(2006). The PLRA provides that:

> No action shall be brought with respect to prison condition under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C §1997e(a)(2006).

This requirement of exhaustion of available administrative remedies is mandatory and, no case shall be brought to the federal courts until the inmate-Plaintiff has done so. Booth v. Churner, 532 U.S. 731, 739 (2001); Ahmed v. Dragovich, 297 F.3d 201, 204-205 (3d Cir. 2002) (exhaustion must occur *prior* to filing suit). Accordingly, "it is beyond the power of the court to excuse compliance with the exhaustion requirement." Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000); Booth v. Churner, 206 F.3d at 300 (3d Cir. 2000) (rejecting futility exception) *aff'd*, 532 U.S. 731 (2001).

4

Furthermore, proper exhaustion is required, meaning an inmate must comply with applicable procedural rules and deadlines in accordance with the DOC's grievance procedures.  *See* Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2386 (2006); Spruill v. Gillis, 372 F.3d 218, 232 (3d Cir. 2004).  The Supreme Court in Woodford stressed that construing §1997e(a) to require proper exhaustion "also fits with the general scheme of the PLRA" which attempts to eliminate unwarranted federal-court interference with the administration of prisons and "thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Woodford, 126 S.Ct. at 2387.[2]

Plaintiff's Eighth Amendment claim is that he went to the medical department on 11/29/11 and 11/30/11, but was turned away and denied treatment because no interpreter was available.  (ECF 26, p. 2.)  However, Plaintiff failed to file a grievance for either alleged incident.  (Exh. B.)  Accordingly, since Plaintiff failed to properly pursue any administrative claim in this regard, his complaint should be dismissed for failure to exhaust.

### B. Alternatively, Plaintiff's Eighth Amendment Claim Against the DOC Defendants is not Supported by the Record.

Even if plaintiff had exhausted these issues, the record does not support an Eighth Amendment claim, and certainly not against any of the named defendants.  A Constitutional violation under the Eighth Amendment in the

---

[2] Although plaintiff is no longer in state custody, his status as a "prisoner" is determined at the time his complaint was filed in court.  George v. Chronister, 319 F. App'x 134, 137 (3d. Cir. 2009).  At the time this complaint was filed (and on 6/20/12, when plaintiff first raised the Eighth Amendment medical claims – see ECF 26), plaintiff was incarcerated and thus, the PLRA exhaustion requirements are applicable.  Ahmed v. Dragovich, 297 F.3d 201, 210 (3d Cir.2002)

5

medical context occurs when prison officials are deliberately indifferent to an inmate's serious medical needs.  <u>Estelle v. Gamble</u>, 429 U.S. 97,103 (1976).  In order to establish a violation of the constitutional right to adequate medical care, the evidence must show 1) a serious medical need, and 2) acts or omissions by prison officials indicating deliberate indifference to that need. <u>Rouse v. Plantier</u>, 182 F.3d 192,197 (3d Cir. 1999).

A medical need is *serious* if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity of a doctor's attention. <u>Manmouth Cnty. Corr. Inst. Inmates v. Lanzaro</u>, 834 F. 2d 326, 347 (3d Cir. 1987). In <u>Lanzaro</u> the Court identified a series of instances where a medical need might be considered serious. *Id.* These instances include situations where a denial or delay causes an inmate to suffer a life-long handicap or permanent loss, or if the denial might require corrective surgery. *Id.*

Here, the record is utterly devoid of evidence suggesting a serious medical need.   To the contrary, the record shows that Plaintiff's medical "needs" at this time involved a routine eye checkup on 11/30/11 (Exh. C), and complaints of dyspepsia and constipation on 11/28/11 or 11/29/11 (Exh. D.)  When examined by PA Telega on 11/28 or 11/29, plaintiff did not even require medication or further medical treatment, but was told to decrease his coffee intake, and increase water and fiber. (Exh. D.)

Moreover, plaintiff cannot establish the requisite deliberate indifference by any **defendant** (or by medical staff who were not named as defendants, for that matter). Estelle, 429 U.S., 102-104 (1976); Lopez v. Corr. Med. Servs., Inc., 499 F. App'x 142, 146-47 (3d Cir. 2012) (stating, that a failure to show Defendants were personally involved through acts, omissions, or policies will result in grant of summary judgment for defendants)[3]. Indeed, plaintiff never sued any nurse, doctor or other medical staff member. Plaintiff does not suggest that any of the defendants he did sue (the Secretary, the Superintendent, hearing examiners or staff involved with school or inmate employment) had anything to do with his medical care on 11/29/11 or 11/30/11, nor can he.

Plaintiff's dispute, if it really exists, was with medical staff such as nurses or doctors who are not parties to this case. But even so, the record refutes any suggestion of deliberate indifference by these "unnamed" medical personnel, since plaintiff was seen in medical and did receive care on the days at issue. The "Pass" dated 11/30/11 which was attached as Exhibit B to his response to defendants' Motion to Dismiss (ECF 26, p. 8) shows only a notation "- No interpreter – Sorry." This pass seems to indicate that plaintiff was to come to medical for a "Snellen Eye Exam with Nurse." Id. This Pass also shows that plaintiff was at medical for nearly 25 minutes that morning (11/30/11), which is consistent with the medical records themselves – all of which show that plaintiff

---

[3] Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." O'Black v. Beard, 2009 WL 2957782, *7-8 (W.D. Pa.), citing Estelle, 429 U.S. at 104. It can be manifested by intentional refusal to provide care, denial of prescribed medical treatment, or, as plaintiff claims here, "persistent conduct in the face of resultant pain and risk of permanent injury." O'Black, *7-8, citing White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

did, in fact, have his eye exam that morning. (Exh. C.) Likewise, the progress notes reveal that plaintiff was seen and examined by PA Telega on either 11/28/11 or 11/29/11 for complaints of dyspepsia and constipation. (Exh. D.)

Therefore, as Plaintiff's Eighth Amendment claim is not supported by the record, and there is no suggestion, let alone evidence, of personal involvement by any named defendant, judgment should be entered in favor of the DOC Defendants and against Plaintiff.

Respectfully submitted,

**BRUCE R. BEEMER**
First Deputy Attorney General

By: /s/ Mary Lynch Friedline
Mary Lynch Friedline
Senior Deputy Attorney General
Attorney I.D. No. 47046

Office of Attorney General
564 Forbes Avenue, Manor Complex
Pittsburgh, PA 15219

Date: October 16, 2015